CITY OF BARNSDALL v. CURNUTT.

No. 31833. Dec. 4, 1945.

Rehearing Denied April 16, 1946.

Second Petition for Rehearing Denied Nov. 26, 1946.

*174 P. 2d 596.*

Frank T. McCoy, John T. Craig, and John R. Pearson, all of Pawhuska, for plaintiff in error.

Jesse J. Worten, of Pawhuska, for defendant in error.

DAVISON, J. This is an appeal from the district court of Osage county, wherein the defendant in error, Mabel Curnutt, administratrix of the estate of H. M. Curnutt, deceased, hereinafter called intervener, obtained a judgment against the plaintiff in error, hereafter called plaintiff, enforcing an attorney's lien.

We find from the record that on January 25, 1941, the plaintiff by written contract employed H. M. Curnutt as its attorney to investigate and determine who was polluting the water supply of plaintiff and bring action for damages and to restrain further pollution. For his services H. M. Curnutt was to receive 40% of the sum recovered either by compromise or prosecution of action to conclusion.

H. M. Curnutt commenced investi-

gation, and in August, 1941, the Cities Service Oil Company made a tentative offer of $25,000 in settlement, which was declined by plaintiff. On September 8, 1941, H. M. Curnutt filed petition for damage for plaintiff against Cities Service Oil Company and two of its employees for $253,000 damages, endorsed with his name and "Attorney's Lien Claimed." On September 21, 1941, Curnutt died. On October 7, 1941, the intervener and her attorney appeared before the city council of the plaintiff and requested that the employment contract be completed by her attorney. On October 13, 1941, the intervener addressed a letter to the plaintiff reciting the prior visit, the purpose thereof, and that $10,000 was claimed as an attorney's fee for services under the contract. By letter of same date the plaintiff advised intervener other attorneys had been procured and to turn over all exhibits, files, and evidence. This was done. The claim of intervener was denied by plaintiff.

The attorneys employed to succeed Curnutt in the litigation are the same attorneys now representing the plaintiff in the present contest.

On May 25, 1943, the action was settled for $35,000, paid by Cities Service Oil Company and Cities Service Gas Company, and that amount, by agreement of plaintiff and defendants and by order of the court, was paid to the court clerk to be held for the plaintiff subject to the attorney's lien claims of McCoy, Craig & Pearson, attorneys for plaintiff, and of the personal representative of H. M. Curnutt, deceased, and the cause dismissed with prejudice. The court clerk disbursed $10,500 to plaintiff's attorney, held $10,000 to await the order of the court, and paid the balance to the plaintiff.

On June 11, 1943, the intervener filed petition in intervention in the case substantially alleging the above facts, and further stating $25,000 of the amount secured was the result of the efforts of H. M. Curnutt prior to his decease, and that $10,000 was a fair, just, and reasonable fee under the contract. The intervener prayed that the court direct the court clerk to disburse the $10,000 to intervener for the purpose of discharging the "lien claim of the said H M. Curnutt upon the funds realized from the settlement of said cause."

Preliminary motions and demurrer were filed and disposed of. Plaintiff filed its answer alleging H. M. Curnutt failed to properly protect the plaintiff's interest by investigation, securing of evidence, and preparation and filing of petition; that the employment contract was thereby breached, and was terminated by death; that plaintiff had to employ other attorneys to complete the litigation and pay 30% of the recovery, or $10,500, to these attorneys; that the petition had to be amended and further investigation made; that intervener was entitled to a reasonable fee of $1,000 for the services of H. M. Curnutt. Intervener filed reply denying generally those allegations of plaintiff inconsistent with petition in intervention and denying any acts of carelessness detrimental to interests of plaintiff.

The court, on application of the intervener and over the objection of the plaintiff, found that the matter was an equity case to be tried to the court without the intervention of a jury. Upon the trial of the cause evidence of the parties was heard and the trial court determined the issues in favor of the intervener, finding that H. M. Curnutt prior to his death had earned the sum of $10,000 under the contract of employment and directing the court clerk to pay to intervener the $10,000 being held by him. From this judgment plaintiff has appealed.

The plaintiff complains of the trial court's refusal to submit the issues to a jury.

Title 5 O. S. 1941 § reads as follows:

"From the commencement of an action, or from the filing of an answer containing a conterclaim, the attorney who represents the party in whose be-

half such pleading is filed shall, to the extent hereinafter specified, have a lien upon his client's cause of action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his client's favor; and the proceeds thereof, wherever found, shall be subject to such lien, and no settlement between the parties without the approval of the attorney shall affect or destroy such lien, provided such attorney serves notice upon the defendant or defendants, or proposed defendant or defendants, in which he shall set forth the nature of the lien he claims and the extent thereof; and said lien shall take effect from and after the service of such notice, but such notice shall not be necessary provided such attorney has filed such pleading in a court of record, and endorsed thereon his name, together with the words "Lien claimed?"

In the present case intervener does not ask a personal judgment against the plaintiff, but seeks under the above statute the enforcement of a lien upon the fund remaining in the court clerk's hands from the proceeds of the settlement of the cause of action of plaintiff.

In Callahan v. Cowley & Riddle, 117 Okla. 58, 245 P. 48, we said concerning the above section and following related sections:

". . . Thus, the purpose of said sections is to create such lien analogous to liens created by statute, the better to secure laborers and other employees, and to create a certain liability of the adverse party for a fee. . . "

See, also, Lashley v. Moore, 112 Okla. 198, 240 P. 704; State ex rel. Mothersead v. Dyer, 126 Okla. 260, 259 P. 212.

The question as to the nature of the action or proceeding to secure benefits under 5 O. S. 1941 §§ 6-10 has been the subject of a number of decisions by this court. In Jones v. Ralls, 152 Okla. 95, 3 P. 2d 665, we said in paragraph 1 of the syllabus:

"An action to enforce an attorney's lien, based upon compromise of litigation without notice to attorney, is an equitable action, and, unless the judgment is clearly against the weight of evidence, same will not be disturbed on appeal."

In Boulding v. Slick, 161 Okla. 189, 17 P. 2d 391, we stated in the fourth paragraph of the syllabus:

"An action by an attorney to enforce an attorney's lien against a party to an action or proposed action whose interest is adverse to the client contracting with the attorney, based on a compromise or settlement of litigation without notice to the attorney, is an equitable action."

See, also, Simpson v. Baker, 123 Okla. 118, 252 P. 834; Sterling Milk Products Co. v. Brown, 146 Okla. 302, 294 P. 117; McArthur v. Lotridge, 177 Okla. 184, 58 P. 2d 326.

The case of Wolfe v. Campbell, 107 Okla. 112, 230 P. 506, is cited in plaintiff's brief. Under the facts in that case the plaintiff had no contract or agreement for a fixed or contingent fee giving a lien upon the subject of the action and in addition did not elect to proceed under the statutes under consideration in the above-cited cases. The plaintiff was appealing solely to the equity powers of the court to impress any judgment he might recover as a lien upon the defendant's property. The decision is not in point here.

Plaintiff also cites Western States Oil & Land Co. v. Helms, 143 Okla. 206, 288 P. 964. In the cited case the parties without objection submitted the cause to a jury and the statement with reference to the cause being triable to a jury was not necessary to the decision. The statement is obiter dictum and is disapproved.

Plaintiff also contends in connection with the question of the equity or law aspect of this matter that the lien under the statute was discharged by the deposit with the court clerk of money in the amount of the claim of intervener. It is clear that such was the intention of the parties to the settlement as concerned the defendants. Did it have that effect as to the parties to this

appeal? We think not. The sum deposited with the court clerk was a portion of the proceeds of the settlement of the plaintiff's cause of action and by the express wording of 5 O. S. 1941 § 6, supra, the lien attached.

The statement of this court in Jones v. Ralls, supra, is the law in this state, and under the facts in this case the action of the trial court in treating the matter as one of equitable cognizance and denying a jury was correct.

The plaintiff complains that the theory upon which the case was tried and judgment rendered was erroneous.

The contract of employment had been made and H. M. Curnutt had performed services at the time of his death. A contract of this kind is one of personal trust and confidence requiring personal services, and upon death of the attorney the contract is terminated. The recovery permitted in such event is the reasonable value of the services rendered under the contract. 7 C. J. S. 1032.

The parties to this appeal agree that a reasonable fee should be recovered. In the case before us the plaintiff's cause of action which was the subject of the employment contract was settled subsequent to the death of H. M. Curnutt and the cause of action filed by him thereon dismissed. Nothing further remains to be done with reference to the action. In Roe v. Sears, Roebuck & Co., 132 F. 2d 829, it is said:

"We are, however, convinced that the decisions are well nigh unanimous in holding that recovery may be had in contingent fee cases if the client ultimately recovers on its claim and the attorney rendered service in respect thereto, but dies before the client recovered. The theory seems to be that death terminates the contract of employment but the attorney having rendered services of value to his client, his estate may recover the fair value of the services rendered pursuant to the contract."

See, also, cases cited therein.

The case of Morton v. Forsee, 249 Mo. 409, 155 S.W. 765, is cited and relied upon by both parties to this appeal. In that case the estate of a deceased lawyer sought to recover an attorney's fee for services performed by the attorney who died prior to the conclusion of the suit in which he was employed. In upholding recovery the court said:

"The courts are not uniform in the wording of the rule. Some place it squarely upon the doctrine of proportioning the fee according to the service rendered, taking the contract price as the basis, whilst others denominate it a quantum meruit action, with the contract price fixing the value of all the services, which contract price should be lessened in the recovery by what damages the other party has sustained by the failure of full performance. The damages would be such as would be occasioned by getting another to complete the service and matters incident thereto. Slightly different theories are advanced by other courts. . . .

"To my mind the sounder rule is that, in a case where there has been no other consequential damages to the surviving party than the employment of other counsel to continue the work, the executor of the deceased lawyer should be entitled to recover on the basis of the contract price for the services actually performed. Death does not put a party in default in matters of contract. The contract is still of value in determining the price of the services. This rule necessarily calls for the proportioning of the fee as to work performed and work not performed at the date of death. It would also allow the direct and consequential damages occasioned by the stopping of the work. Such would cover what the party had been forced to pay out and expend in money and trouble in having the remainder of the work done."

See cases in annotation in 143 A. L. R. 723.

From an examination of the record this court is of the opinion, intervener proceeded on the theory and sought to recover what was contended to be a reasonable attorney fee earned by H. M. Curnutt in his employment prior to his death. In determining the right to

recover and the amount of recovery the contract of employment establishes employment and may be taken into consideration with other elements in determining the amount of the fee and is evidence of what parties considered a reasonable charge. The termination of the contract by death does not invalidate it for all purposes. The trial judge had before him evidence of the work and investigation of H. M. Curnutt, and also testimony of several outstanding attorneys of the locality as to the amount and value of the services rendered, measured by the terms of the contract, and all of them stated $10,000 was a proper fee. We think it proper that the court, sitting as a court of equitable cognizance, received evidence of the $25,000 tentative offer of settlement in view of the ultimate $35,000 recovery by settlement when determining the reasonable value of attorney's services prior to his death.

This is an equitable action and the findings and conclusion of the trial court will be approved when not clearly against the weight of the evidence. Brazelton v. Lewis, 192 Okla. 568, 137 P. 2d 905.

Plaintiff also complains of the trial court's rejection of certain evidence. From an examination of this complaint we are unable to say that such rejection was error. At any rate, after consideration of the complete record, we are of the opinion that if the rejection of the evidence was in fact error, it was harmless error, and we so hold.

The judgment of the trial court is affirmed.

GIBSON, C.J., HURST, V.C.J., and CORN and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., dissent.

Supplemental Opinion on Rehearing.

PER CURIAM. Upon petition for rehearing plaintiff in error insists that the Curnutt estate at all times was seeking a money judgment against it, thus requiring a jury tral.

It points to the fact that the petition in intervention alleges that "the sum of $10,000.00 is due"; that in the opening statement counsel stated, "We are asking judgment in that amount," and that the judgment itself provides:

"It is therefore ordered, adjudged and decreed that the city of Barnsdall is indebted to H. M. Curnutt in the sum of $10,000 for services rendered under his contract prior to his death and the clerk of the district court is hereby authorized and directed to pay to the said Mabel Curnutt, administratrix of the estate of H. M. Curnutt, the sum of $10,000 being held by him, the cost of this proceeding to be paid by the plaintiff, City of Barnsdall.

"It is further ordered, adjudged and decreed that the plaintiff, city of Barnsdall, pay to the said Mabel Curnutt, administratrix of the estate of H. M. Curnutt interest at the rate of 6% per annum from this date, in the event such payment is delayed as a result of appeal by the city of Barnsdall until such time as the order of this court is complied with, and the Clerk of this court is further directed to delay the execution of this order until the plaintiff's motion for a new trial is disposed of. . . ."

Notwithstanding the above-quoted statements in the petition and the opening statement of counsel, the matter throughout the trial and upon this appeal was presented by the estate purely as a matter of an allowance of an attorney's fee out of funds in the hands of the court and upon which there existed a lien. The order and judgment of the court directs the payment of the $10,000 by the clerk. This was a special proceeding as distinguished from a civil action by statute 12 O.S.1941 §§ 3, 4, and 5. Therefore, the statutory provisions for jury trial in civil actions is not applicable.

We think, however, there is merit in the city's criticism of the judgment wherein it provides for the payment of interest in excess of the amount in custody. The $10,000 to be paid by the clerk exhausts the fund in custody, and the judgment directing payment of interest, if treated as effective, could be enforced only as provided for the enforcement of money judgments. The

judgment in that respect is foreign to the issues and matters presented to the court by the claim of the estate.

The judgment is therefore reformed by deletion of all parts thereof purporting to require payment by the city of interest. In all other respects the judgment is affirmed.

RILEY, J. (dissenting). The trial court denied the city of Barnsdall a trial by jury and determined as a matter of equity that H. M. Curnutt, prior to his death September 21, 1941, had earned $10,000 by part performance of his contingent attorney's fee contract providing 40% of the amount, $35,000, subsequently recovered May 25, 1943, in an action brought by the city September 8, 1941, for pollution of its water reservoir.

The city's judgment for damages to its water supply was obtained by attorneys employed after Curnutt's death, under a contingent contract providing an attorney's fee of 30% of the amount paid.

Constitutionally, the right of trial by jury shall remain inviolate. Section 19, art. 2, Const. Unless a jury is waived, issues of fact arising in actions for the recovery of money shall be tried to a jury. 12 O.S. 1941 §556.

Though by statute, 5 O.S. 1941 §6, an attorney's lien is provided, upon failure of complete performance, of necessity an issue of fact arises, it is one of quantum meruit and is triable to a jury. It is only after the amount of an attorney's fee is determined that the court, in the exercise of its equity powers, may decree a lien against the recovery or a fund held in custodia legis. Wolfe v. Campbell, 107 Okla. 112, 230 P. 506; Western States Oil & Land Co. v. Helms, 143 Okla. 206, 288 P. 964.

There are cases where the amount of the attorney's fee is uncontradicted, Simpson v. Baker, 123 Okla. 118, 252 P. 834; Sterling Milk Prod. Co. v. Brown, 146 Okla. 302, 294 P. 117, and all nec-

essary services are performed. In such cases no issue of fact arises as a condition precedent to the enforcement of a lien. Orwig v. Emerick, 107 Okla. 134, 231 P. 234; Cooper v. Jackson, 104 Okla. 227, 231 P. 223. Otherwise, as in the last cited cases, "it was incumbent upon the attorney claiming the lien . . . to establish the amount he was entitled to recover". Where the amount is in dispute, a jury trial exists as a matter of right. Frame v. State ex rel., 196 Okla. 292, 164 P. 2d 865.

There can be no difference in law between a mortgage lien and an attorney's lien. An attorney's lien is "analogous to liens created by statute, the better to serve laborers and other employees". Callahan v. Cawley & Riddle, 117 Okla. 58, 245 P. 48. The determination of the amount of attorney's fee claimed is "the foundation of the right to a lien". Wolfe v. Campbell, 107 Okla. 112, 230 P. 506; McCoy v. McCoy, 30 Okla. 379, 121 P. 176.

Distinction and form between actions at law and suits in equity in this jurisdiction are abolished. 12 O.S. 1941 §10. There was no need, therefore, to determine the nature of the action. The action presented an issue of fact for the recovery of money, triable to a jury.

But if I err thus far, equity is outraged by the decree sustained. Had Senator Curnutt lived to complete his contract, his recovery would have been $14,000, or 40% of the judgment in damages. The successor attorneys achieved that recovery on behalf of the city and were paid an attorney's fee of $10,500, being 30% provided in the subsequent contingent contract. The statute limits a contingent attorney's fee contract to 50% of the amount recovered, less costs of litigation; equity follows the law. Thus the cost of litigation to the city exceeded by $6,500 that provided by the original contract, and while a suitor may make several contingent attorney's fee contracts, nevertheless, under the facts presented in equity, the statutory limitation was exceeded.

The attorney is not to be excused from performing his contract simply because death was his misfortune and not his fault. Neither was the attorney's death the fault of the city, and so the city, as employer of the attorney, should neither gain nor lose in the contractual relation by reason of the attorney's death.

The proposed settlement, rejected upon advice of Senator Curnutt in his lifetime, is no criterion of the amount his administratrix is entitled to recover. Scales v. Wynne & Wynne (Tex. Civ. App.) 242 S.W. 515. I cannot, as a judge, nor may any other, or court, espouse such a "vicarious generosity", Blackhurst v. Johnson, 72 F. 2d 644, for "where issue is joined as to the indebtedness due, either party is entitled to a trial by jury, as a matter of right". Scott v. Jones-Everett Machine Co., 82 Okla. 255, 200 P. 168; Conservative Oil Co. v. Graper, 173 Okla. 127, 46 P. 2d 441.

Two opinions (16 O.B.J. 1751, 17 O.B.J. 602) have been required to satisfy the majority view. One in reversal would better serve the ends of law.