CHICAGO, ROCK ISLAND & PACIFIC
RAILROAD COMPANY, a Corporation,
Plaintiff in Error,

v.

RITTENHOUSE, HANSON & EVANS and
Irving H. Green, Defendants in Error.

No. 36099.

Supreme Court of Oklahoma.

May 3, 1955.

Rehearing Denied June 14, 1955.

Savage, Gibson & Benefield, Oklahoma City, for plaintiff in error.

Irving H. Green, Beverly Hills, Cal., Walter D. Hanson and Stephen G. Evans, Oklahoma City, for defendants in error.

DAVISON, Justice.

This is an appeal from a judgment for attorney's fees in favor of the movants, Irving H. Green, Rittenhouse, Hanson & Evans, Walter D. Hanson and S. G. Evans, against Chicago, Rock Island and Pacific Railroad Company, defendant. The parties will be referred to as they appeared in the trial court.

The movants were attorneys for one John Tollie Smith in the prosecution of an action for damages for personal injuries against said railroad company, as defendant. On September 12, 1952, after trial, verdict, and ordered remittitur, judgment was rendered in favor of said Smith, as plaintiff, against the above-named defendant in the principal amount of $75,000. The movants here were employed on a fee basis of 33⅓ per cent of the amount recovered, contingent upon recovery and collection. No endorsement was made on any of the pleadings or records of movants' claim of attorney's lien but the record discloses testimony of oral notification of defendant of said fee arrangement and lien, prior to the rendition of judgment. The defendant took preliminary steps toward perfecting an appeal from the judgment.

About the middle of November, 1952, the defendant, in an unethical manner, through a special claim agent, paid to the said Smith, $25,000 in full satisfaction of the judgment and secured from him an executed written "Release and Satisfaction of Judgment". This was done without the knowledge or consent of his attorneys, the above-named movants. On January 2, 1953, the movants filed a motion in the original damage suit, seeking a judgment against the defendant for $25,000, the amount due them as attorneys for the plaintiff. A copy of said motion and notice thereof was duly served on the defendant. Issues were joined and a trial thereof had to the court, resulting in judgment for movants, from which this appeal has been perfected. In rendering judgment, the trial court made findings of fact and conclusions of law as follows:

"Finding of Fact

"The court makes the following findings of fact:

"1. The plaintiff's attorneys, Rittenhouse, Hanson & Evans and Irving H. Green, hereinafter referred to as movants, had an oral contract with the plaintiff, John Tollie Smith, for a fee of one-third of the amount recovered herein.

"2. That at the time defendant made settlement with the plaintiff and secured a release and satisfaction of judgment from the plaintiff, the defendant had actual notice of the contingent attorney fee contract between the plaintiff and said movants.

"3. That movants had, at all times subsequent to the entry of judgment herein in favor of plaintiff and against the defendant, an attorneys' lien for the sum of $25,000.00, pursuant to movants' contract with the plaintiff.

"4. That the testimony of the plaintiff to the effect that one Harry Laird caused the plaintiff to employ Irving H. Green as one of his attorneys herein is contradicted by other testimony given by the plaintiff, and is therefore insufficient to support the contention of defendant that movants' attorneys' contract with plaintiff is void, illegal and unenforcible.

"5. That this court has no jurisdiction in this action to make any adjudication concerning the defendant's contentions that movant Irving H. Green, a non-resident of this state, has heretofore had some kind of working arrangement with said Harry Laird and other laymen whereby the said Laird and others contacted railroad companies' employees who had been injured in the course of their employment, recommended to such persons

that they employ Irving H. Green as their attorney, paid certain expenses of injured railway companies' employees or former employees in their efforts to secure settlements or adjudications of their claims against railroad companies, and by their acts and conduct otherwise indicated that they had personal interests in the amounts sought by such injured persons against the railroad companies. However, this court is of the opinion that defendant's attempted proof of the alleged acts of said Laird in procuring clients for said Irving H. Green, while not within the scope of this hearing, presents a matter of vital concern to the bench and bar of this state. Without attempting to determine whether there is or is not any merit to defendant's contentions regarding movant Green, Laird, and/or other laymen, this court recommends that the Oklahoma Bar Association investigate such contentions made by the defendant, and should the Oklahoma Bar Association, from its investigation find there have been improper acts of solicitation or other misconduct on the part of Laird or others in behalf of movant, Green, this court suggests in that event that the Oklahoma Bar Association forthwith commence an action in a court of this state against all offending parties to secure necessary and proper relief.

"Conclusions of Law

"The court concludes as a matter of law that movants now have an attorneys' lien herein against the defendant in the sum of $25,000.00 and for which sum judgment is to be entered in favor of movants and against defendant, in accordance with a formal journal entry of judgment.

"Exceptions are allowed defendant to each and every finding of fact and conclusion of law.

"Done in Open Court at Oklahoma City, Oklahoma, this 12th day of March, 1953."

Statements made by the court in the above-quoted findings give some indication of the fact that the large record in this case is replete with testimony of conduct of both parties which, if true, was not only unethical but reprehensible. It should however, be pointed out here that the testimony casts no reflection whatever upon the Oklahoma Attorneys employed in the case on either side.

The first and most important proposition presented by this appeal is stated by defendant in its brief, as follows:

"The court was without jurisdiction of the subject matter and the parties after the release and satisfaction of judgment was filed therefore the present judgment entered on the motion is void."

The entire controversy hinges upon the meaning and effect of the provisions of 5 O.S.1951 §§ 6, 7, and 8, dealing with attorneys' liens and the method of perfecting them.

It is contended that said section 6, supra, requires a written notice to be served upon the defendant, of the lien claimed. That was not done. However the attorney for plaintiff testified that, in April, 1952, he told one of defendants' attorneys of the contingent fee arrangement with plaintiff for one-third of the amount of recovery. All actions of the defendant as shown by other testimony point to the conclusion that defendant had actual knowledge of the lien claim. The statute does not provide what kind of notice shall be given nor its necessity in case of actual knowledge. In the case of Goldberg's Loan Office v. Evans, 169 Okl. 397, 37 P.2d 286, 288, it was held that a letter written to the defendant by plaintiff's attorney informing him of the attorneys' employment for prosecution of the claim and of the attorneys' claim of lien on any settlement or payment, was sufficient notice even though the letter was written before the filing of the action. Therein it was stated that:

"Thus Goldberg knew from the very outset that Evans was claiming a lien on any compromise, settlement, or pay-

ment growing out of the case of Martin v. Goldberg's Loan Office, a corporation. * * * In Martin he found a tool who was willing to make quick settlement out of court without notifying or paying his employed attorney. It was a collusive and fraudulent arrangement between Goldberg and Martin for the deliberate purpose of defrauding Evans out of his fee. Under such circumstances it comes with poor grace for Goldberg to defend against liability herein on the technicality that he did not have sufficient notice of Evans' claim for attorney's fees. His motive claiming insufficient notice lacks both honesty and equity."

The Colorado Court, in the case of Aleman v. Annable, 110 Colo. 61, 129 P.2d 987, 988, in construing the attorney lien statute providing for notice thereof to defendant, said that:

"The principal contention has to do with the alleged failure of notice to Aleman of intention to claim lien, such notice being required by the attorney's lien law. Sections 14 and 15, chapter 14, '35 C.S.A. A sufficient answer to this contention is that the trial court specifically found that Aleman had actual knowledge of Schaper's claim, and his counsel admits that there was a conflict of evidence on the point. In these circumstances we are of the opinion that there is sufficient evidence in the record to support the finding and consequently we do not disturb it. Where actual notice was had it was not fatal that Schaper's lien was not filed until after the Pelton assignment."

■ The reasoning in that case is sound and the conclusion is equitable. In the case before us, the trial court found that defendant had actual knowledge of the lien claimed. Under such circumstances further or different notice was immaterial. The settlement of the case by the parties in the manner disclosed by the record constituted collusion as against the attorneys and their claim for fees. The parties should not be allowed to take advantage of that kind of action on the grounds that notice should be written and formal when the secrecy of their actions becries knowledge of all facts they claim they should have been notified of.

■ The finding of fact that defendant had actual notice of the fee contract and claim of lien was not contrary to the weight of the evidence. Nor was the finding that the evidence was insufficient to support the contention that the attorneys' contract was illegal and unenforcible. The action was in the nature of an equity suit and as such was triable to the court. Simpson v. Baker, 123 Okl. 118, 252 P. 834. In such cases, the findings of the trial court will not be disturbed where they are not against the clear weight of the evidence.

■ Having concluded that the movants had a lien upon the judgment for their fee, we are confronted with the proposition of the jurisdiction of the court to render judgment in their favor without first vacating the satisfaction of judgment executed by Smith. The defendant relies upon the holding in the case of Wood v. Hines, 117 Okl. 86, 245 P. 846, wherein it was held that the trial court had no jurisdiction, after a dismissal of the action before judgment, to allow attorneys fees on motion without first vacating the dismissal and reinstating the cause. A different situation however, is presented after rendition and entry of judgment. Upon proper dismissal nothing is before the court. But a filing of a release and satisfaction of a judgment is not necessarily the termination of the court's jurisdiction. The attorneys, having a lien by statute had an interest in the judgment to the extent that, by the provisions of the same statute they "had the right, in a separate action or in a motion in the same action, to enforce their rights and to have the court declare their ownership in the judgment." Cherry v. Erwin & Erwin, 173 Okl. 511, 49 P.2d 788, 791. After judgment, the plaintiff and his attorney claiming a lien, stand in the position of joint owners of the judgment and "one of said parties may not, without express authority, release and discharge the interest of the other party there-

in." Gasper v. Mayer, 171 Okl. 457, 43 P.2d 467, 468.

It is provided by 5 O.S.1951 § 8, as follows:

"After judgment in any Court of Record, the attorney's lien, provided for herein may also be effective against the judgment debtor, by entering same in the judgment docket opposite the entry of the judgment, and such attorney may enforce any lien provided for by this act in any court of competent jurisdiction by action filed within one year after he becomes aware of such compromise, or judgment may be rendered on his motion in the case in the court in which the suit was brought."

Under that provision, had the movants herein endorsed their names on the judgment roll, there could be no question but that, upon motion, judgment for the attorney fee could be rendered in their favor against the defendant. The only purpose for so endorsing the judgment roll is for the sake of notice. The movants were the equitable owners of a part interest in the judgment immediately after its rendition. Therefore, as to the defendant here who had actual knowledge of such ownership, no further notice was necessary for its protection. Had the rights of an innocent third person, such as an assignee, intervened, a different question would be presented.

Thus, by reason of the last-quoted statute, the trial court had jurisdiction to render the judgment complained of.

A part of the brief of each party is devoted to a discussion of accord and satisfaction. That theory of law would have application to the position of the principal plaintiff but could not affect the rights of these movants, for whom the plaintiff had no authority to act. Its consideration would lend strength to movants' position in that the settlement and release was conclusive on plaintiff's part ownership of the judgment and therefore it could not be vacated; that movants' only method of procedure was the motion for judgment in their own names for the part due them without disturbing the situation as to the remaining portion. Be that as it may, the movants had the right to proceed in the manner they did.

The judgment is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, ARNOLD, HALLEY, BLACKBIRD and JACKSON, JJ., concur.